## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

CONOCOPHILLIPS COMPANY,      )
     )
        **Plaintiff,**      )
     )
**v.**      )      **Case No. 12-CV-0249-CVE-PJC**
     )
**JUMP OIL CO., INC.,**      )
**RPM INVESTMENT COMPANY, INC.,**      )
**JASON A. MILTENBERGER,**      )
**MELISSA MOORE MILTERNBERGER,**      )
**DAVID A. MILTENBERGER,**      )
**STEVEN A. MILTENBERGER, and**      )
**SONDRA MILTENBERGER,**      )
     )
        **Defendants.**      )

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Jason Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 14); Defendant Jason Miltenberger's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. ## 15, 17); Defendant Jason Miltenberger's Motion to Dismiss for Insufficient Service of Process (Dkt. # 16); Defendant M. Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support Thereof (Dkt. # 18); Defendant RPM Investment Company's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 20); Defendant Sondra Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 23); Defendant Sondra Miltenberger's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 24); Defendant Sondra Miltenberger's Motion to Dismiss for Insufficient Service of Process (Dkt. # 25); Defendant Steven A. Miltenberger's Motion to Dismiss for Lack of Personal

Jurisdiction (Dkt. # 26); Defendant Steven A. Miltenberger's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 27); and Defendant Steven A. Miltenberger's Motion to Dismiss for Insufficient Service of Process (Dkt. # 28). Defendant Jump Oil Company, Inc. (Jump Oil) has also filed motions to dismiss (Dkt. ## 29, 30, 31), but Jump Oil has filed for bankruptcy and plaintiff's claims against Jump Oil have been stayed. Dkt. # 61.

<h1 style="text-align:center">I.</h1>

Jump Oil markets and distributes gasoline and other petroleum-based products to fuel stations in Missouri and Oklahoma. Dkt. # 9, at 3. Jump Oil is a Missouri corporation with its principal place of business in Missouri, but it is registered to do business in Oklahoma. Dkt. # 37-1. Jump Oil supplies fuel to seven service stations in Oklahoma, but the vast majority of the fuel stations to which it provides fuel are located in Missouri. In March 2007, Jump Oil and ConocoPhillips Company (ConocoPhillips) negotiated a Branded Marketer Agreement (BMA) under which ConocoPhillips allowed Jump Oil to purchase petroleum products and use ConocoPhillip's marketing materials.[1] In return, Jump Oil agreed to purchase a minimum amount of fuel and "follow ConocoPhillips guidelines regarding image standards, product identification, price and payment terms, credit cards, and network access." Dkt. # 9, at 3. ConocoPhillips claims that while the BMA was being negotiated, Jump Oil's president, Steven Miltenberger, and other representatives of Jump Oil made several visits to ConocoPhillips' office in Bartlesville, Oklahoma and the BMA was

---

[1]     The amended complaint alleges that ConocoPhillips and Jump Oil executed the BMA on March 1, 2010 and then amended the BMA in January 2009. Dkt. # 9, at 3. The January 2009 amendment states that the BMA originally became effective of March 1, 2007, and the Court will use this date as the effective date of the BMA. See Dkt. # 9-2, at 2.

executed by both parties in Bartlesville.[2]  Paul Curtis, Director of Credit for ConocoPhillips, states

that these contacts occurred beginning in March 1, 2010 and continued up until 2012.  Dkt. # 37-2,

at 4.

In January 2009, ConocoPhillips discontinued the Marketing Service Allowance Program,

and amended the BMA to implement a new program known as the Branded Incentive Program

(BIP).  Dkt. # 9-2.  Under the BIP, ConocoPhillips "provided monetary incentive payments to Jump

Oil [and] . . . Jump Oil agreed to remain current on ConocoPhillips brand and image standards and

to purchase a minimum volume of gasoline and distillates from ConocoPhillips."  Dkt. # 9, at 3.  The

parties executed a second amendment to the BIP for the purpose of updating Jump Oil's address, but

no substantive changes were made to the BMA.[3]  Dkt. # 9-3.  ConocoPhillips claims that, in March

and April 2010, Jason Miltenberger, Melissa Moore Miltenberger, David A. Miltenberger, Steven

Miltenberger, and Sondra Miltenberger executed personal guaranties, and that RPM Investment

Company, Inc. (RPM) executed a corporate guaranty.[4]  Jump Oil also executed a security agreement

granting ConocoPhillips rights to certain collateral, and ConocoPhillips filed a UCC Financing

Statement with the Missouri Secretary of State.  Dkt. # 9-6.  The personal guaranties require the

guarantor to send notice to ConocoPhillips in Bartlesville in the event that the guarantor attempts

---

[2]     ConocoPhillips has provided copies of e-mails that it claims supports this assertion.  Dkt. #
        37-6.  However, the attached e-mails were sent between August 31, 2010 and March 23,
        2011 and these e-mails post-date the execution of the BMA, even if the Court were to
        assume that the negotiations took place in early 2010 as ConocoPhillips alleges in its
        amended complaint.

[3]     The second amendment to the BMA states that it is amending a BMA "with an effective date
        of March 1, 2007 . . . ."  Dkt. # 9-3, at 2.

[4]     Based on the exhibits attached to the complaint, RPM executed a corporate guaranty in
        March 2010 and the other guarantors executed personal guaranties in March and April 2004.
        See Dkt. # 9-4.

to revoke the guaranty or, if the guarantor dies, the executor of the guarantor's estate is required to mail notice to ConocoPhillips in Bartlesville. Dkt. # 9-4. There is no evidence that any such notices were actually sent to ConocoPhillips.

ConocoPhillips alleges that Jump Oil failed to pay all amounts owed under the parties' agreement. On December 15, 2011, ConocoPhillips sent a written demand to Jump Oil seeking immediate payment of the full amount due. Dkt. # 9, at 4. On April 30, 2012, ConocoPhillips filed this case alleging that Jump Oil breached the BMA by failing to pay for nearly $3 million of fuel and, with other charges and fees, ConocoPhillips seeks $3,215,719.12 in damages from Jump Oil. ConocoPhillips also alleges breach of guaranty claims against each of the guarantors. Sondra Miltenberger, Jason Miltenberger, and Steven Miltenberger[5] have submitted affidavits stating that:

2.    I am a resident of the State of Missouri. I have never been a resident of the State of Oklahoma.

3.    I do not do business in the State of Oklahoma. I do not own, use, or possess any real or personal property in the State of Oklahoma.

4.    I do not pay any type of Oklahoma tax.

5.    Upon information and belief, the [BMA] that is the subject of Plaintiff's First Amended Complaint . . . was negotiated, executed, and performed in the State of Missouri.

.    .    .

10.    None of the events regarding the execution or performance of the alleged Personal Guaranty occurred in Oklahoma nor were the events related to any assets or property in Oklahoma. The Personal Guaranty is not governed by Oklahoma law.

---

[5]    David A. Miltenberger has neither filed a responsive pleading nor made an appearance in this case.

11.    I do not [sic], and have never had, minimum contacts to the State of Oklahoma and have never expected that I could be hauled [sic] into any State or Federal Court in Oklahoma.[6]

12.    If [this case] were to proceed in Oklahoma, I would be severely burdened and prejudiced because of the long distance from my residence in Missouri and because all witnesses that I might call to defend against Plaintiff's claims would also have to travel from Missouri.

Dkt. # 14-1; Dkt. # 23-1; Dkt. # 26-1.   Melissa Miltenberger is a veterinarian living in Wildwood, Missouri.   She claims that her signature on a personal guaranty was forged and she had no knowledge of the guaranty until this case was filed.[7]   Dkt. # 18-1, at 1-2.   She also states that she is not a resident of Oklahoma and does not do business in Oklahoma.   She divorced Jason Miltenberger in 2010 and, in May 2008, she transferred any interest she may have had in Jump Oil to her former husband as part of their separation agreement.   Id. at 2.   Defendants Jump Oil, RPM, Steven Miltenberger, Sondra Miltenberger, and David Miltenberger reside within the Western District of Missouri, and defendants Jason Miltenberger and Melissa Miltenberger reside within the Eastern District of Missouri.   On February 25, 2013, Jump Oil filed a suggestion of bankruptcy stating that it had filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of

---

[6]    This statement constitutes a legal conclusion, rather than a factual assertion, and will be disregarded by the Court when ruling on defendants' motions to dismiss.

[7]    Melissa Miltenberger argues that the Court lacks personal jurisdiction over her solely based on her allegation of forgery.   The guaranty is governed by Texas law and there is no clear Texas law establishing whether forgery is an affirmative defense on which the defendant bears the burden of proof.   See Gold's Gym Franchising LLC v. Brewer, ___ S.W.3d ___, 2013 WL 1721893 (Tex. App. Apr. 22, 2013); Velasquez v. KWJTV, Inc., 2002 WL 537962 (Tex. App. Apr. 11, 2002).   However, it is apparent that an assertion of forgery goes to the merits of a plaintiff's breach contract claim and, in cases such as this where the parties dispute whether there was a forgery, the issue should be resolved on a motion for summary judgment rather than a motion to dismiss for lack of personal jurisdiction.

Missouri. Dkt. # 59. The Court stayed the case as to plaintiff's claims against Jump Oil, but found

that the automatic stay did not extend to plaintiff's claims against the remaining parties. Dkt. # 61.

**II.**

As to defendants' motions to dismiss for lack of personal jurisdiction, plaintiff bears the

burden of establishing that the Court has personal jurisdiction over the defendants. <u>OMI Holdings,</u>

<u>Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules

on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an

evidentiary hearing, . . . the plaintiff need only make a <u>prima facie</u> showing of personal jurisdiction

to defeat the motion." <u>Id.</u> (citations omitted). "The plaintiff may make this <u>prima facie</u> showing by

demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction

over the defendant." <u>Id.</u> at 1091. "In order to defeat a plaintiff's <u>prima facie</u> showing of

jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some

other considerations would render jurisdiction unreasonable.'" <u>Id.</u> (quoting <u>Burger King Corp. v.</u>

<u>Rudzewicz</u>, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true

to the extent they are uncontroverted by a defendant's affidavit. <u>Taylor v. Phelan</u>, 912 F.2d 429, 431

(10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved

in plaintiff's favor and a <u>prima facie</u> showing of personal jurisdiction is sufficient to overcome

defendant's objection. <u>Id.</u>

Defendants' motions to dismiss for improper venue fall under Fed. R. Civ. P. 12(b)(3). Once

an issue as to venue has been raised, the plaintiff bears the burden to show that venue is proper.

<u>McCaskey v. Continental Airlines, Inc.</u>, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). When venue

is challenged under Rule 12(b)(3) and the parties have not requested an evidentiary hearing, the

plaintiff must make only a prima facie showing that venue is proper in its chosen forum. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). On a Rule 12(b)(3) motion, the Court may consider matters outside the pleadings, and facts alleged in the complaint are taken as true to the extent that they are uncontroverted by defendant's evidence. See Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc., 2010 WL 582205, *3 (N.D. Okla. Feb. 10, 2010); see also Sucampo Pharms., Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008). The Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

As to defendants' motions to transfer venue under 28 U.S.C. § 1404, defendants bear the burden to establish that plaintiff's chosen forum is inconvenient, and plaintiff's choice of forum is given considerable weight. Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992). A court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient. Employers Mut. Cas. Co. v. Bartile Roofs, 618 F.3d 1153, 1168 (10th Cir. 2010). When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. Huang v. Napolitano, 721 F. Supp. 2d 46, 48 n.3 (D.D.C. 2010); United States v. Gonzalez & Gonzales Bonds and Ins. Agency, Inc., 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010).

## III.

### A.

Plaintiff argues that the Court has personal jurisdiction over defendants Jason Miltenberger, Melissa Miltenberger, Steven Miltenberger, and Sondra Miltenberger, because these defendants entered a contractual relationship with a business located in Oklahoma and plaintiff's claims arise out of defendants' contacts with Oklahoma. The guarantors, except for RPM, argue that they do not have sufficient minimum contacts with Oklahoma for this Court to exercise personal jurisdiction over them. RPM has not challenged the Court's jurisdiction and it has waived any argument as to personal jurisdiction.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum

contacts between the defendant and the forum State.'" <u>Intercon</u>, 205 F.3d at 1247 (quoting <u>World-Wide Volkswagen</u>, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" <u>Id.</u> at 1247 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." <u>Id.</u> at 1247 (citing <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414-16 & n.9 (1984)).

Plaintiff could be arguing that defendants' business contacts with Oklahoma are sufficient to establish general personal jurisdiction over defendants. Dkt. # 37, at 5. Plaintiff argues that the guarantors could reasonably have expected to be haled into court in Oklahoma because they negotiated and agreed to incur a potential indebtedness to a creditor located in Oklahoma. Dkt. # 37, at 9. Plaintiff relies on <u>O'Hare International Bank v. Hampton</u>, 437 F.2d 1973 (7th Cir. 1991), to support its argument that a nonresident guarantor is subject to personal jurisdiction in a forum in which the agreement was to be performed or the indebtedness incurred. In that case, O'Hare International Bank (the Bank), an Illinois corporation, received as collateral the assignment of a lease executed between Air Lease, Inc. (Air Lease) and World Travelers, Inc. (World Travelers) Air Lease was an Illinois corporation and World Travelers was an Oklahoma corporation. In addition, there were 13 guarantors of the lease located in Oklahoma, Arkansas, Texas, and Florida.

After Air Lease assigned the lease to the Bank, World Travelers failed to pay rent under the lease and the Bank filed suit in federal court in Illinois. The defendants filed motions to dismiss for lack of personal jurisdiction. Viewing the facts in a light most favorable to the Bank, the Seventh Circuit stated that the contractual negotiations occurred in Illinois and the lease was executed in Illinois. The guaranty specifically provided that it "shall be construed according to the law of the State of Illinois, in which State it shall be performed." Id. at 1177. The Seventh Circuit found that World Travelers purposefully directed its activities toward Illinois by entering a contract with an Illinois corporation and it availed itself of the protection of Illinois' laws by choosing Illinois law to govern the contract. The guarantors did not receive any immediate consideration for executing the guaranty but, considering the totality of the circumstances, the guarantors had sufficient minimum contacts with Illinois that they could be subject to personal jurisdiction in Illinois.

O'Hare International is distinguishable from the instant case. Although plaintiff uses O'Hare International to support an argument for general jurisdiction, the Seventh Circuit did not expressly state whether it was finding general or specific personal jurisdiction over the guarantors. Rather than examining the guarantors' general contacts with the forum state, the Seventh Circuit considered only those contacts related to the plaintiff's claims and the analysis was similar to that used by Tenth Circuit in cases concerning specific personal jurisdiction. In O'Hare International, the plaintiff and the assignee of the lease were Illinois corporations, and the guaranty provided that Illinois law would apply. However, Oklahoma, has a less significant connection to the parties in this case, because ConocoPhillips is a Delaware corporation with its principal place of business in Texas, and Jump Oil and the guarantors are citizens of Missouri. ConocoPhillips maintains an office in Bartlesville and it has some connection to Oklahoma, but is not an Oklahoma corporation and it has more

10

substantial ties to other forums. In addition, the laws of Oklahoma will not be used to decide the substantive issues in this case, because the parties agreed that the guaranties would be governed by Texas law. The Tenth Circuit has not found that a guarantor is subject to personal jurisdiction in a forum simply because the party is a guarantor and the plaintiff is located in the forum state but, instead, the Tenth Circuit has considered the existence of a guaranty as only one of the factors used to determine whether a party purposefully directed its activities toward a particular forum. First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1131 (10th Cir. 1987). When reviewing the parties' arguments, the Court will consider the guaranty as a factor in the personal jurisdiction analysis, but plaintiff must offer specific facts in addition to the guaranty showing that each defendant is subject to personal jurisdiction in Oklahoma.

The evidence presented by plaintiff is not sufficient to make a prima facie showing that the guarantors are subject to general personal jurisdiction in Oklahoma. Plaintiff has provided no evidence that Sondra Miltenberger, Jason Miltenberger, or Melissa Miltenberger were involved in any negotiations on behalf of Jump Oil or that they otherwise conduct business in Oklahoma, and their sole connection to the case is that they executed a guaranty for indebtedness incurred by Jump Oil. This does not show that any of these defendants's contacts with Oklahoma were so "'continuous and systematic' as to render [them] essentially at home" in Oklahoma. Monge v. RG Petro-Machinery (Group) Co. Ltd., 701 F.3d 598, 614 (10th Cir. 2012) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)). Plaintiff argues that Steven

Miltenberger visited Oklahoma several times in 2010 to negotiate the BMA[8] and he later came to Oklahoma to negotiate a potential settlement of Jump Oil's debt. Dkt. # 37-2. However, the Court must consider the capacity in which Steven Miltenberger was acting when he came to Oklahoma. Ace Investors, LLC v. Rubin, 494 Fed. App'x 856, 859 (10th Cir. Aug. 20, 2012).[9] Plaintiff filed this case, inter alia, seeking to enforce a personal guaranty executed by Steven Miltenberger, but he visited Oklahoma in his capacity as the president of Jump Oil. A court does not have personal jurisdiction over a corporate representative based on acts of the corporation, and "jurisdiction over representatives 'must be based on their individual contacts with the forum state.'" Ruskiewicz v. Lowe, 556 F.3d 1095, 1103 (10th Cir. 2009). Based on the evidence submitted by plaintiff, it is reasonable for the Court to find that Steven Miltenberger visited Oklahoma and that he directed telephonic and e-mail communications to plaintiff in Oklahoma, but the only reasonable inference from the evidence is that these actions were all taken as president of Jump Oil. While the "corporate shield doctrine" should not be applied mechanically, plaintiff has not shown that Steven Miltenberger has had any contacts with Oklahoma other than the alleged negotiation of the BMA in Bartlesville, and the Court does not find that he has such continuous and systematic contacts with Oklahoma that this Court can exercise general jurisdiction over him.

Plaintiff argues that the Court has specific personal jurisdiction over the guarantors collectively, but plaintiff offers no specific arguments as to each guarantor. For a court to exercise

---

[8]     Plaintiff also claims that Steven Miltenberger was negotiating on behalf of the other guarantors when he visited Oklahoma in 2010. However, the copies of the personal guaranties attached to the complaint show that the guaranties were executed in 2004, and it is not plausible to believe that these guaranties were the subject of negotiations in 2010. See Dkt. # 2-4.

[9]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

specific jurisdiction over a nonresident defendant, a plaintiff must show that "the defendant has 'purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state'" and that "the litigation results from alleged injuries that arise out of or relate to those activities." Employers Mut. Cas. Co., 618 F.3d at 1160. The existence of an agreement or contract, standing alone, may not be enough to justify the assertion of personal jurisdiction over a non-resident defendant, but "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). In a contract case, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008). The mere presence of one of the contracting parties in the forum state may not be enough to support the exercise of personal jurisdiction over a non-resident defendant, and the "contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state." TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1292 (10th Cir. 2007).

Although plaintiff treats the guarantors as a group for the purpose of personal jurisdiction, the Court must determine whether it has specific jurisdiction over each defendant and it must consider each guarantor's role in the negotiation and execution of the personal guaranties. The Court has found no evidence that Sondra Miltenberger, Jason Miltenberger, or Melissa Miltenberger were involved in any negotiations with ConocoPhillips, and it appears that their only act with any bearing on this case is their execution of a personal guaranty for Jump Oil's indebtedness to

ConocoPhillips.  The guaranties were formally signed and executed by the guarantors in Bolivar, Missouri.  Dkt. # 2-4.  Plaintiff has no evidence that any of the guarantors other than Steven Miltenberger visited Oklahoma to meet with ConocoPhillips.  Although ConocoPhillips maintains an office in Bartlesville, it is a Delaware corporation with its principal place of business in Texas, and the parties selected Texas law to govern the construction and performance of the guaranties. Plaintiff claims that Jump Oil conducts "vast operations" in Oklahoma and that the guarantors presumably derive a benefit from Jump Oil's operations, and the guarantors "must have reasonably expected they would be haled into an Oklahoma Court [sic] to answer for the unpaid debt incurred by Jump Oil as a result of the operations."  Dkt. # 37, at 9.  However, plaintiff significantly overstates the extent of Jump Oil's operations in Oklahoma and, even if this were a relevant consideration, plaintiff has presented no evidence as to what benefit the guarantors actually derived from Jump Oil's business operations in Oklahoma.  As to Steven Miltenberger, the Court has found no evidence that Steven Miltenberger visited Oklahoma to negotiate a personal guaranty on behalf of himself or the other guarantors.  Plaintiff claims that he made numerous trips to Oklahoma and sent e-mails to Oklahoma in 2010, but the evidence submitted by plaintiff shows that the personal guaranties were executed in Missouri in 2004.  Considering all of the evidence, the Court does not find that the guarantors purposefully availed themselves of the privilege of conducting business in Oklahoma, and the state of Oklahoma has little or no connection to the personal guaranties executed by defendants   Sondra Miltenberger, Jason Miltenberger, Melissa Miltenberger, or Steven Miltenberger.  The Court concludes that it lacks personal jurisdiction over these defendants.

Plaintiff requests leave to conduct jurisdictional discovery before the Court rules on the motions to dismiss for lack of personal jurisdiction.  "When a defendant moves to dismiss for lack

of jurisdiction, either party should be allowed discovery on the factual issues raised by the motion." Sizova v. Nat'l Institute of Standards & Technology, 282 F.3d 1320, 1326 (10th Cir. 2002). However, a district court has discretion in the manner in which it resolves a motion for lack of jurisdiction, and jurisdictional discovery is not required if no party will be prejudiced by the refusal to allow discovery. Id. "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of facts is necessary." Id. There is no precedent suggesting that jurisdictional discovery should be permitted to give a plaintiff a second opportunity to prove that a defendant is subject to the personal jurisdiction in a particular forum. Plaintiff chose to respond to defendants' motions to dismiss by raising a purely legal argument, and it did not argue that it was unable to prepare a complete response to the motions without jurisdictional discovery. Plaintiff has not identified any contested factual issues that merit further inquiry before the Court rules on the motions to dismiss, and there is no basis for the Court to find that any party will be prejudiced by the denial of jurisdictional discovery. The Court finds that guarantors' motions to dismiss for lack of personal jurisdiction should be granted without allowing plaintiff leave to conduct jurisdictional discovery.

## B.

RPM argues that plaintiff filed the case in an improper venue and it asks the Court to dismiss plaintiff's claim against RPM. In the alternative, RPM asks the Court to transfer this case to the Western District of Missouri under 28 U.S.C. § 1404(a). Plaintiff responds that a substantial part of the events giving rise to this case occurred in the Northern District of Oklahoma, and venue is proper in this judicial district.

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(b)(2) does not require that a court determine which judicial district has the most substantial connection to the case but, instead, venue may be proper in multiple districts as long as a substantial part of the events or omissions giving rise to the case occurred in those districts. Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1165-66 (10th Cir. 2010). When determining whether venue is proper under § 1391(b)(2), a district court must "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims," and "whether substantial 'events material to those claims occurred' in the forum district." Id. at 1166 (citations omitted).

RPM argues that it unnecessary to consider whether venue is proper under § 1391(b)(2), because all defendants reside in Missouri and venue can be established in the Eastern or Western Districts of Missouri under § 1391(b)(1). Dkt. # 20, at 3. RPM cites several district court decisions which have interpreted § 1391 in a hierarchical manner and treat § 1391(b)(1) as controlling if there is a district in which venue would be proper under this subsection. See Cobra Partners L.P. v. Liegl, 990 F. Supp. 332 (S.D.N.Y. 1998); Canaday v. Koch, 598 F. Supp. 1139 (E.D.N.Y. 1984). However, this is a minority position and the majority of federal district courts, including district courts located within the Tenth Circuit, have found that § 1391(b)(1) and § 1391(b)(2) are alternative venue provisions that expand the number of permissible venues for a civil case. Kukui Gardens Corp. v. Holco Capital Group, Inc., 664 F. Supp. 2d 1103 (D. Hawaii 2008); Wise v.

Lindamood, 89 F. Supp. 2d 1187 (D. Colo. 1999); Merchants Nat'l Bank v. Safrabank, 776 F. Supp. 538 (D. Kan. 1991). The Court finds the majority position to be persuasive and the Court will treat § 1391(b)(1) and § 1391(b)(2) as alternative, rather than hierarchical, venue provisions.

The parties do not dispute that venue could be proper in the Eastern or Western Districts of Missouri, because all defendants reside in Missouri and at least one defendant resides in each district. However, plaintiff argues that this Court is also a proper venue for its claims because a substantial part of the events giving rise to this case occurred in Bartlesville. Plaintiff's claims arise out of a contractual agreement for the sale of gasoline and petroleum products. Plaintiff is a Delaware corporation with its principal place of business in Texas, but Jump Oil negotiated with plaintiff through its Bartlesville office. Jump Oil supplies fuel to service stations in Missouri and Oklahoma, but the substantial majority of the service stations to which Jump Oil distributes fuel are located in Missouri. The BMA and the BIP are governed by laws of the state in which Jump Oil maintains its principal place of business, and Jump Oil maintains its principal place of business in Missouri. Dkt. # 9-1, at 25. RPM executed a corporate guaranty and other guarantors executed personal guaranties for indebtedness incurred by Jump Oil, and each of the guaranties was executed in Missouri. The guaranties are governed by Texas law.

The Court finds that the Northern District of Oklahoma is a proper venue for this case. RPM's motion to dismiss focuses only on events related to plaintiff's breach of guaranty claim against RPM, but § 1391 requires the Court to determine whether it has jurisdiction over a "civil action." The substantiality requirement of § 1391(b)(2) is "satisfied upon a showing of 'acts and omissions that have a close nexus' to the alleged claims." Employers Mut. Cas. Co., 618 F.3d at 1166 (quoting Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003)). A district court

must consider the entire sequence of events underlying the plaintiff's claims, rather than a single triggering event giving rise to the filing of a lawsuit.  Id.  In this case, ConocoPhillips negotiated with Jump Oil through its offices in Bartlesville, and representatives of Jump Oil visited Bartlesville and communicated with ConcoPhillips working in Bartlesville.  Although the majority of Jump Oil's business is conducted in Missouri, Jump Oil is licensed to conduct business in Oklahoma and it provides fuel to seven service stations in Oklahoma.  Even though the Court has concluded that it lacks personal jurisdiction over the personal guarantors, the personal jurisdiction analysis is focused on each guarantor's contacts with the forum, rather than the entire course of events giving rise to plaintiffs' claims.  Considering all of the events giving rise to plaintiff's claims, the contract negotiations that took place in Bartlesville or through employees located in ConocoPhillips' Bartlesville office have a close nexus to plaintiff's claims, and a substantial part of the events giving rise to plaintiff's claims occurred in this judicial district.

## C.

RPM asks the Court to transfer this case to the Western District of Missouri under 28 U.S.C. § 1404, because that court would be a more convenient forum for the parties and witnesses.  Dkt. # 20.  The individual guarantors request that plaintiff's claims be dismissed for lack of personal jurisdiction or transferred to the Western District of Missouri under 28 U.S.C. § 1406.  Plaintiff argues that transfer of venue would not be appropriate under 28 U.S.C. § 1404, but its response does not contain any argument as to transfer under § 1406.

Under § 1404(a), a district court may transfer a civil case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses."  However, § 1404 applies only when the case has been filed in a proper venue, and a court may not transfer a case

under § 1404 if it lacks personal jurisdiction over a defendant or venue is improper. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 n.3 (10th Cir. 1991). In cases when a court has found that it lacks personal jurisdiction over the defendant or that venue is improper, the court has the discretion to transfer a case to an appropriate forum under 28 U.S.C. §§ 1406 and 1631.[10] When deciding whether to dismiss or transfer a case, a district court should consider whether the case would be time-barred if re-filed, if the plaintiff's claims are likely to have merit, and if the plaintiff acted in good faith by filing in the selected forum. Trujillo v. Williams, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006). The court must also make a finding that the transferee court is one in which the case could have been filed. Viernow v. Euripides Development Corp., 157 F.3d 785, 793 n.16 (10th Cir. 1998). Even if the defendant consents to a transfer to a forum, the Court cannot transfer a case to another court under § 1404 or § 1406 without determining whether the case "could have been brought" in the transferee court. See Chrysler Credit, 928 F.2d at 1515-16.

The Court has found that is lacks personal jurisdiction over the guarantors, except for RPM, and it must decide whether to dismiss plaintiff's claims against the guarantors or to transfer the case to a forum in which the case could have been filed. The Court has reviewed the amended complaint and it appears that plaintiff's claims are likely to have merit, and this favors transfer of the case to a more appropriate forum for further proceedings. Although the Court has found that it lacks personal jurisdiction over the guarantors, there is no basis to find that plaintiff acted in bad faith by filing the case in this Court. ConocoPhillips has an office in Bartlesville and Jump Oil conducted negotiations with ConcocoPhillips in Bartlesville, and the Court has determined that venue is proper

---

[10] Although § 1406 mentions only transfer for improper venue, the Tenth Circuit has held that a district court lacking personal jurisdiction has the authority to transfer a case to a "court in which the action . . . could have been brought at the time it was filed . . . ." Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524, 1527 (10th Cir. 1987).

under § 1391(b)(2).  The guarantors have raised a successful personal jurisdiction challenge, but this does not by itself show that plaintiff acted in bad faith or was seeking to harass the guarantors by filing a case in a distant or inconvenient forum.  The Court finds that the interests of justice require that the case be transferred to a forum in which the case could have been filed, and plaintiff's claims against the guarantors should not be dismissed due to lack of personal jurisdiction.  Under 28 U.S.C. § 1391(a), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  Defendants ask the Court to transfer this case to the Western District of Missouri.  Five of the seven defendants reside in that district and all of the defendants reside in Missouri, and this would be a more convenient forum for the majority of the defendants.  Venue is proper in the Western District of Missouri under § 1391(a), because at least one defendant resides in that district and all defendants reside in the state of Missouri.  The Court finds that it would be preferable to allow plaintiff to proceed against the individual guarantors in the Western District of Missouri under § 1406, rather than dismiss plaintiff's claims against these defendants for lack of personal jurisdiction.

RPM has also requested transfer of venue under § 1404.  Under 1404(a), a court may transfer a civil case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses."  The Tenth Circuit has identified several factors that should be considered by a district court in ruling on a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp., 928 F.2d at 1516. When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses. Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993). Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed. Scheidt, 956 F.2d at 965. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Id.

The first Chrysler Credit factor is the plaintiff's choice of forum. This case presents an unusual circumstance in which the Court has venue under § 1391 but plaintiff has failed to meet its burden to show that the Court has personal jurisdiction over a substantial number of the defendants. A plaintiff's choice of forum is generally given significant deference, but this deference is lessened if the plaintiff does not reside in the judicial district or if the "facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." Employers Mut. Cas., Co., 618 F.3d at 1168. Even if plaintiff were permitted to proceed against RPM in this Court, plaintiff would be required to litigate its claims against the other guarantors in a different forum. Although the Court is a proper venue, there is another forum with a more substantial connection to the parties and the events giving rise to the case, and transfer of venue to the Western District of Missouri would eliminate the prospect of multiple lawsuits in different courts over claims arising out of the same set of facts. Under the circumstances, the Court finds that plaintiff's choice of forum is not entitled to a significant amount of deference.

The second and fourth <u>Chrysler</u> <u>Credit</u> factors support transfer of venue to the Western District of Missouri.[11] RPM states that all of its witnesses and evidence are located in Missouri and it will be severely burdened if it is required to defendant against plaintiff's claims in Oklahoma. Plaintiff has made no attempt to show that the individual guarantors are within the subpoena power of this Court, and it is unclear if these witnesses can be compelled to testify in this judicial district. While plaintiff states that "almost all" of its evidence is located in Bartlesville, the Court notes that ConocoPhillips is a Delaware corporation with its principal place of business in Texas, and it is reasonable to infer that some of its witnesses and evidence are located outside of Oklahoma. This Court may be a somewhat more convenient forum for plaintiff, because plaintiff maintains an office in Bartlesville. However, the Western District of Missouri would be substantially more convenient for the defendants. Under the fourth factor (enforceability of a judgment), there is also a substantial question as to whether plaintiff could enforce a judgment against RPM in this Court. RPM primarily operates in Missouri and RPM states that the corporate guaranty does not concern assets or property located in Oklahoma. Dkt. # 20-1, at 1-2. Even if plaintiff were to obtain a judgment against RPM, it is likely that plaintiff would be required to execute on property located outside this Court's jurisdiction in order to enforce the judgment.

The seventh and eighth <u>Chrysler</u> <u>Credit</u> factors concern conflict of law and choice of law issues. As to plaintiff's claims against RPM, the parties agreed that the corporate guaranty would be governed by Texas law, and there is no clear advantage to having issues of Texas law being

---

[11] The third factor (cost of making necessary proof) does not strongly support either party, because a transfer of venue will merely transfer some expenses from one party to other. Neither party has shown that transfer will substantially enhance or decrease the expense to the parties, and the Court finds that this is a neutral factor. In addition, the parties offer no argument as to the fifth (obstacles to a fair trial) or sixth (congested dockets) <u>Chrysler</u> <u>Credit</u> factors, and the Court does not find that these factors weigh for or against transfer of venue.

resolved by this Court or the Western District of Missouri. However, should plaintiff's claims against Jump Oil remain pending after completion of the bankruptcy proceedings, there would be a substantial advantage in having a federal court in Missouri decide issues of Missouri contract law. The Court also takes into account that the State of Missouri has a substantial interest in providing a forum for claims against its residents, and this case does not significantly impact an Oklahoma citizen or the application of Oklahoma law. As to the final Chrysler Credit factor, the parties have not identified any other factors that would make a trial of this matter easier or more expeditious in the Western District of Missouri, and the Court finds that the ninth Chrysler Credit factor does not weigh for or against transfer of venue.

In consideration of all of the Chrysler Credit factors and the Court's finding that plaintiff's claims against the individual guarantors should be transferred under § 1406, the Court finds that this case should be transferred in its entirety to the Western District of Missouri. The Court lacks personal jurisdiction over the individual guarantors but the Western District of Missouri is an appropriate forum for plaintiff's claims against these defendants. Under § 1404(a), the Court finds that the convenience of the parties and witnesses strongly support the transfer of plaintiff's remaining claims to the Western District of Missouri. All of the defendants are located in Missouri but none of the parties is a citizen of Oklahoma. There are no issues of Oklahoma law for this Court to decide, but there could be questions under Missouri law if plaintiff's claims against Jump Oil remain pending after bankruptcy proceedings are completed. There would also be substantial issues as to this Court's authority to enforce a judgment against defendants and assets located in Missouri. The majority of the defendants reside in the Western District of Missouri and the Court finds that this would be the most convenient forum for the parties and witnesses.

**IT IS THEREFORE ORDERED** that Defendant Jason Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 14), Defendant Sondra Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 23), and Defendant Steven A. Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 26) are **granted** to the extent that the Court lacks personal jurisdiction over defendants Jason Miltenberger, Sondra Miltenberger, and Steven Miltenberger but **denied** as to dismissal of plaintiff's claims against these defendants.

**IT IS FURTHER ORDERED** that Defendant M. Miltenberger's Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support Thereof (Dkt. # 18) is **granted**.

**IT IS FURTHER ORDERED** that Defendant Jason Miltenberger's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. ## 15, 17), Defendant RPM Investment Company's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 20); Defendant Sondra Miltenberger's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 24), and Defendant Steven A. Miltenberger's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 27) are **granted** as to transfer of venue and **moot** as to dismissal for improper venue.

**IT IS FURTHER ORDERED** that Defendant Jason Miltenberger's Motion to Dismiss for Insufficient Service of Process (Dkt. # 16), Defendant Sondra Miltenberger's Motion to Dismiss for Insufficient Service of Process (Dkt. # 25), and Defendant Steven A. Miltenberger's Motion to Dismiss for Insufficient Service of Process (Dkt. # 28) are **moot**.

**IT IS FURTHER ORDERED** that defendant Melissa Moore Miltenberger's Unopposed Motion for Extension of Time in which to Answer or Otherwise Respond (Dkt. # 12), the Second Unopposed Motion of ConocoPhillips Company for Extension of Time to Respond to Defendants' Motions (Dkt. # 36), the Opposed Motion for Extension of Time to Reply to Plaintiff's Response to Various Motions to Dismiss (Dkt. # 39) are **moot**.

**IT IS FURTHER ORDERED** that Defendant Jump Oil Co., Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 29), Defendant Jump Oil Co. Inc.'s Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer and Brief in Support (Dkt. # 30), and Defendant Jump Oil Co., Inc. Motion to Dismiss for Insufficient Service of Process (Dkt. # 31) **remain pending** due to the automatic stay of plaintiff's claims against Jump Oil.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to **transfer** this case to United States District Court for the Western District of Missouri.

**DATED** this 31st day of May, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE